Good afternoon, everyone. The panel has before it a total of six cases. Three of them are being submitted without oral argument today on the briefs, namely, Appeal No. 06-3283, Smart v. Merit System Protection Board, Appeal No. 06-1531, International Custom Products v. United States, and Appeal No. 06-3411, Dobrok v. Department of Veterans Affairs. On the three-case argument list, we'll hear argument first in Appeal No. 06-1286, In Re Comiskey. Mr. Scott, welcome to you. Good afternoon. Please proceed. Your Honor, if I could just make an initial remark about this case. One of the things that has been, in my view, pervasive throughout the entire consideration of this case is the fact that Mr. Comiskey's invention is fundamentally, in and of itself, extremely simple. It is not the normally complex type of technology that this Court is to require understandable invention, but its elegant simplicity is the fundamental thing about it that makes it available for patent protection. Well, what's the innovation, Mr. Scott, if all of the elements of ADR resolution of contract or wills or like disputes were already known in the settlement art, assuming there is such a thing, what more did the inventor or purported inventor do here other than to put on a computer well-known techniques and verbiage that had been done for a great deal of time in a non-computerized way? Well, Your Honor, the important point is that the record of this case demonstrates that the statement you made is just not correct. The idea of having a mandatory arbitration system for unilateral documents such as wills and codicils has not been shown before the Patent Office to have been anywhere disclosed in the prior art, either directly or as an indication of obvious. Well, is it mandatory? In what sense is it mandatory? I know he calls it that, but it's hard for me to understand the reality of why it's mandatory. It's mandatory because the system created by Mr. Kaminsky allows a party to register or enroll a will, codicil, or other testamentary document in a system in which a party is required. That's the part I don't understand. If I write a will and it reads out my normal heir, Judge Dyke, and he wants to contest the will, why is he required to contest it using the 110 system that Mr. Kaminsky invented? Why isn't he perfectly entitled to go to court, in the probate court perhaps, and contest the will that I left? Because under this system, the requirements of the system are that he will, by operation of law, be excluded from consideration on the will because the system will incorporate a mandatory clause in the will. Yeah, yeah, but of course, you can put anything you want in the will. I'm going to put in your clause, Mr. Kaminsky's recommended clause. But why does that bind Judge Dyke, who had nothing to do with the clause being put in, who didn't know the clause was put in, who never agreed to be bound by such a clause, who never forfeited his right to go to probate court? Why is he bound? Because the testator can mandate. I think what Chief Judge Michel is asking you is why is this enforceable under state law? Well, it's enforceable because it is, in fact, a provision which a testator can put into a document which will bind a person to go to that particular arbitration system or be foreclosed. Under what law? Under what law is he foreclosed? I think under the law of most of the states of this country, a person can put in a will a provision which excludes, which is a poison pill provision. It requires the recipients or potential beneficiaries under the will to claim under a system that the will itself requires or be foreclosed from any kind of… Barred from court. Barred from court, yes. Under state law, you said. Under state law, that's enforceable in almost every, to my knowledge, every jurisdiction in this country. I thought some states have precluded it. Well, not to my knowledge, Your Honor. Do the claims here require the use of a computer? The claims do not themselves require the use of a computer. Isn't there an issue here about whether this is patentable subject matter? Well, if it were, it's been foreclosed because the Patent Office did not raise that issue. Then it was never raised in the Patent Office proceeding? Well, it was considered by the Patent Office. It was by the examiner? Not by the examiner, but it was considered by the solicitor before he entered his brief and disappeared. He got an extension of time to evaluate whether he wanted to remand the case to the board for consideration. What about us? What precludes us from remanding the case to the board and suggesting that the board reopen examination and have the examiner look at the 101 issues and maybe some 112 issues and do a thorough assessment and then there'll be perhaps a further repeal of the board? Are we barred from doing that? Well, my understanding is as a court of review of the record that you would be in a position to either affirm or reverse or to vacate for further proceedings. Well, I was suggesting the latter. Vacate and remand is what I posited. Well, I don't believe that it would be appropriate for you to vacate on a grounds that was never raised by the Patent Office and not considered by us. Well, why not? Under Chenery, we can affirm on an alternative legal ground never considered by the agency as long as it doesn't require fact-finding. If we were to say as a matter of law the statute doesn't allow the patenting of this subject matter, why can't we just affirm? Well, you could affirm on that ground if, in fact, you came to the conclusion that the subject matter of this claim did not address the statutory subject matter. Is it your view, then, that we could affirm on the 101 ground, but we couldn't vacate and remand for re-examination? Yes, that is my view. Why is that? That seems very illogical. It seems like it would be the other way around if it was only one. Well, it would seem to me it would be inappropriate as a court of review to... I think you have the authority to vacate and remand for consideration on that ground, but I think it would be inappropriate for a court of review to, at this point, consider that on a blank record and to affirm on the basis that... It sounds like you're changing your mind. I may be articulating it. I may, in fact, be changing my mind. You're allowed. I'm just pointing it out. I'm trying to give adequate consideration to your honest question. Go ahead. I think it's right. You would have authority to vacate and send it back to be considered on the basis of statutory subject matter. Why couldn't we just affirm? If we can conclude that as a legal matter this isn't a patentable subject matter, why can't we just affirm? You could, as a matter of authority of this court, do that, but I think it would be inappropriate to affirm on that basis without giving the appellant an adequate opportunity to brief that issue and fully explicate all the reasons why this subject matter is statutory. What about if we can't tell for sure whether there are some underlying factual issues? In that circumstance, wouldn't the preferred route be to remand for reexamination? That certainly would be the case, yes. But I submit to you that this is statutory subject matter. Why? Because it is addressed to a method that's useful and unique and is clearly understood and distinctly claimed. Is it enabled by the application? Absolutely. There's no question in my mind that it's fully enabled by Mr. Komiskey's disclosure. He discloses exactly how to perform the method and how to implement it in a complete and full manner. All, in my view, all the requirements of the patent statute have been met here. The only issue which the board has raised is whether— Well, let me ask you this. Since the patent, you say, doesn't limit itself to computerized, Internet-related systems, if I were to operate a system such as Mr. Komiskey is claiming here entirely on paper, you'd say that I would be ensnared in his patent, I'd be infringing his patent? If, in fact, you had a mandatory system— Well, it's only mandatory to the extent that you put some boilerplate language in saying, this document is mandated for arbitration. I mean, what's inventive about that? Lawyers have been putting clauses like that in documents for decades, if not centuries. But what they have not done is register them with the system so that when the document had to be enforced, the system would know of its existence and be able to require any party that was involved in it— Okay, and it would change my example. I maintain the system on paper in my office, including a role of pre-selected arbiters who are going to decide disputes. And I advertise that if anybody wants to contest the wills that are on file in my office, they have to seek arbitration from the approved list. What's the difference between that and the claim? If, in fact, what you postulated met all the limitations of the claim, and I haven't yet firmly in my mind that you have listed them all, then what you propose would be using the subject matter of the patent. But it's old art. Lawyers have been doing this for years. Now, I submit to you that it is not old art, and that the Patent Office was unable to demonstrate that in the record of this case. Well, that's primarily because you say in the prior art that having arbitration provisions like this in a will is a new idea, right? Is a novel idea. No, I didn't say—I said having a mandatory system in which all the claim limitations are met. And putting it into a will. Putting it into a will, having an arbitration system, and then requiring that system to be operated through the system itself is novel. And no one in the Patent Office or elsewhere has demonstrated that not to be the case. What about the novelty of claims 32 to 59 that involve contract and like documents, bilateral documents where parties did specifically agree to arbitration, etc.? What's new and inventive about that? Why isn't that old, old, old art? Well, I think, again, I think our argument on that side is weaker. But the point is that no one has demonstrated that there was a mandatory system that required enrolling those documents prior to their, or at the time of their execution. And that's not the way in which the American Arbitration Association works. You put an arbitration clause in a contract, and then you notify them later. The idea of pre-enrolling or enrolling at the time of the executing of the contract is, to our knowledge, not known anywhere in art. Well, the board found otherwise, and there's no support for that in the patent. I think you've got a much better argument with respect to the claims that involve wills. And on that point, Your Honor, I think we should point out, we think very strongly that we made the case for separate consideration of both claims. How can you say that when you didn't separately argue why Claim 2, for example, would be patentable even if Claim 1 were found non-patentable? The only way, you can't preserve it by just saying you want to preserve it. You have to actually demonstrate claim by claim by claim what the different scopes are that would allow one to be patentable even if the other is not. Well, I think Your Honor is somewhat confused there. There were two sets of claims. The ones that went to unitary documents that were independent claims. One was a representative of that, and then there was a document, the contract claims from 32. We said in our brief that those stood or fall separately. The examiner agreed with us. We separately argued them in the brief. And when the board... Separately argued each of the first 32 claims? No, we separately argued Claim 1 and from Claim 32. So we separately argued without question the codicil, the testamentary claims. Well, you say without question, but it looks like the patent board didn't see it that way at all. The patent board said that all the claims stand and fall together because of the failure to distinguish them. And then as I recall, the board selected as the single representative claim of the whole lot of 59, Claim 32, which is a bilateral document claim, your weaker ground. Well, Your Honor is incorrect. What we did do was we separately argued the unitary document claims from the contract claims. We presented separate arguments. Now, the patent office did say that they didn't think we had complied with the rules. We petitioned that they be separately considered. That petition was denied on the grounds that the patent office separately addressed the two types of documents in its decision. Your logic is they would have had to have picked, for example, as a representative claim of the first set, Claim 1, and of the second set, Claim 32. That's correct. But in fact, they only considered 32 representative of all 59. That's what they said. What do you mean it's what they said? It's what they did. No, it's not what they did. They separately rejected Claim 1 and used different art to explain the grounds for rejection. And let me suggest to you, under this court's decision in Ray McDaniel, which is found at 293 F. 3rd, 1379, you said that if a party asserts that the patentability does not stand or fall together, identifies the individual claims that are separately patentable, which we did, and makes separate arguments for those two groups of claims, then it's entitled in this court to have a decision on those separate grounds. Even if it doesn't follow patent office rules? Well, it followed the patent office rules. That's the point. The patent office rules in existence at that time said you had to say that the claims do not stand or fall together, which we did. It said you had to separately argue them, which we did. Well, in the opinion it says since all of the independent claims were argued together as a single group. That's just an incorrect statement. If you look at the record of the case, we did in fact argue that Claim 1 separately from Claim 32, and we presented different grounds. In fact, different art was applied by the board to those claims. Well, I think what the board did is a different matter, but what you did may preserve your position. All right. We'll hear from the government, and we'll give you back the five minutes, the four minutes you sought to preserve a rebuttal since we asked you so many questions, Mr. Scott. Mr. Chen, welcome back. Good afternoon. Please proceed. So why did you not make the one-on-one argument? Well, Mr. Scott is correct in the sense that when we first saw this board decision and saw this appeal, we in the solicitor's office had the same question, whether or not there should be a one-on-one issue here. But for a few different reasons, we elected to just go ahead and go forward with rejections as they are in front of us today. Number one, we saw that not only are there method claims— So you're not saying that you agree that there's no one-on-one argument. You think there is a one-on-one problem here. I think if in a hypothetical world this court were to reverse this one-on-three rejection, I would be not surprised if the office went back and reevaluated these claims on the one-on-one. Mr. Chen, is there some sort of implication when an examiner and then thereafter the board does a one-on-three analysis that the examiner and later the board have satisfied themselves that the threshold requirement of one-on-one has been met? I think by the time a case reaches the board, the board believes that its role is to review what the examiner's work. And occasionally it will go beyond that and impose a new ground of rejection. But typically they— Let me rephrase my question. When the examiner does a one-on-three analysis and in his answer explains that, is he impliedly saying, I've considered one-on-one and I didn't see any problems? I think it is an examiner's job, you're right, to look at all conditions of patentability. One-on-two, one-on-three, one-on-twelve, and necessarily it would include one-on-one. Now one-on-one, I think to be fair to the agency and to the thousands of examiners— What about the notion that, well, the agency had its chance to consider one-on-one, and some perhaps rather shallow, quick one-on-one analysis was impliedly done by the examiner, and it's too late for the agency to now ask this court to say, well, if you don't like the one-on-three rejection, give us another bite at the apple, send it back, and let us do a one-on-one examination. You had a full opportunity to do one-on-one before. There are cases from this court, and I'm thinking of In re Basque, for example, which specifically hold that as long as an application is within the agency's jurisdiction, it has the power to reconsider any previous decisions that the agency has made. So I think for that reason alone, I think the PTO— That may be true before it leaves the building, but in this case, it's left the building, it's here, and you seem to be saying, if you don't like the one-on-three, send it back and let us do one-on-one, and I'm just challenging whether that's fair, because you had the chance to do one-on-one before, and perhaps a very quick and dirty one-on-one analysis was done without being documented by the examiner. So why does the patent office deserve a second bite at the apple to do one-on-one? Well, a couple reasons. Number one, I think the whole climate of the law of one-on-one and what it is today is a lot different than what it was when this application was filed back in 1999. I don't understand that. You mean the law is going to be applied based on what the law was at the time the application was filed instead of at the time the decision is rendered? What I mean to say is that the PTO is currently working on eligibility guidelines. It's already issued some interim guidelines recently and will ultimately issue some finalized guidelines. And beyond that, there was the lab court decision where, although the Supreme Court obviously did not render a decision, there was a very lengthy dissenting opinion that at least ought to get some kind of consideration. The PTO doesn't have substantive rulemaking authority. The legal question is for us. If we consider that this is not patentable subject matter, can we affirm on an alternative ground? When I think about a question like that, I think of this court's role as an appellate court, which is supposedly empowered to review the decisions of the lower tribunal. But in Chenery, the Supreme Court said that an appellate court can affirm on a legal ground not reached by the agency, right? Yes, I seem to recall that, but at the same time, it would be unusual. I've never seen it in my nine years where this court has affirmed on a completely different ground. Well, we've done it. There are cases in our court that have followed that aspect of Chenery. Not necessarily in the PTO context, but with respect to other agencies. Okay. On a different subject, I don't read the board decision as refusing to consider Claim 1 and 17 on the ground that they weren't arguing. What I read in the board decision is saying, technically, they didn't comply with our rules, but we're going to go on and address the merits. Am I reading that incorrectly? I think that's a fair read. I think what they did was they did engage in an analysis of the unilateral document claims separately from the contractual document claims. And even though it believed that perhaps that was waived, that right to do so, they went ahead and performed the analysis. Well, if that's right, then what's your response to Mr. Scott that as to the first 32 claims applying to unilateral documents like Will's, there's a lot of novelty here? No, there isn't, Your Honor. Well, what's the proof that there is? Let me step back. First of all, you're correct that it's not a 102. We're not dealing with a 102. We're dealing with a 103. And first of all, let me build the rejection for you. We have Ginter, which talks about storing, archiving, registering documents that can be retrieved. There are several different embodiments that are in Ginter. It's a very long reference. And one of the embodiments of the usage of Ginter's electronic intermediary is to perform this kind of function. And secondly, that's the same kind of function that the Perry reference provides, which is the tertiary. Walker and Perry and Ginter, as I recall, are all computerized systems. Mr. Scott's point is much more fundamental than that. He says this doesn't have to be computerized. Not claimed as computerized. It's just claimed as a method for achieving certain things by certain steps. So maybe the art relied on by the board really wasn't the right art because it's limited to the computer field. His patent is broader than that. The claim is broad, to be sure, but the prior art references fall within that scope of the claim. And once it does, then the entirety of the claim is rejected. But the problem is that there's nothing in the prior art that talks about using this form of mandatory arbitration in wills. I think that the board apparently made a sensible decision about claims 32 to 59, but under the standard law of obviousness, I'm having a very hard time seeing how the board could find the suggestion to put these into wills out of this prior art. It looks like a big stretch. Okay, let me go through it. We'll go to A9 to 10, which is the board's decision. And first of all, the rejection is predicated on the combination of Ginter, Walker, and Perry. So first, combining Walker's teachings with Perry, we explain thoroughly in our red brief how Walker, in fact, does teach a mandatory arbitration system for the contracts that are registered and built by Walker's system. But that doesn't suggest using it in a will context. Correct, yes. I'm sorry, let me try and get there. And combine that with Ginter's system, which is related, which is document independent. Throughout Ginter's reference, it talks about documents, legal documents in general. It's kind of like, for example, if Ginter is talking about a library that stores, archives books for retrieval. And then the Perry reference, which is a central depository for wills. How does the Perry reference suggest putting a mandatory arbitration clause in a will? I don't get it. All it does is it's a patent on a system for storing wills. Sure. So, what does that teach? I think what I'm trying to say is that the Ginter-Walker combination teaches us that you can use any document. And the documents that are built by the Ginter-Walker combination will be mandated to go through arbitration of any dispute from that document through the Walker arbitration process. Not if it's illegal. Now, Mr. Scott says the state law almost everywhere expressly permits testators to require arbitration. I don't have any knowledge of that one way or the other, but let's assume that that's correct. And it seems to me that you then have a big problem because you're saying the prior art Walker-Ginter combination is so broad that it would include something that under my hypothetical is illegal. I thought it was agreed that illegal things can't be patented. But that doesn't necessarily mean that illegal things were known already in the prior art. And when you combine Ginter and Walker, what you get is that it was known in the art to be able to take any document that's registered and enrolled in this electronic system and then have disputes arising from that document to be resolved by the system itself. It depends on the background law. The system isn't self-executing. It only can work if the background law allows it. It looks to me like your best defense here would have been taking Mr. Scott's point that this is allowed by state law and saying what makes this obvious is not Walker-Ginter. What makes it obvious is the code of 48 of the 50 states that have a provision saying you can put an arbitration clause in a will if that's what they do. But the patent office didn't use state laws as the prior art. Let me try to explain what the alleged invention here is. It's not the idea of inserting an arbitration clause into a given will or contract. Well, that's what Mr. Scott, I thought, suggested as the most novel feature of all the method steps. The innovation here is the added step of going one step beyond adding the arbitration language and pre-assigning his system to control the arbitration should one arise. To be pre-enrolled. To be pre-enrolled so that it's already preordained. Comiskey's system is the one that will choose who the arbitrator is. And that will avoid any fight later on down the road when, in fact, there is a dispute fighting between the various parties over who should be the arbitrator. How is that new? There must be all sorts of agreements where arbitration clauses are permissible, where the arbitration clause says, well, look, if you and Dyck have a fight over this matter, you have to arbitrate. And Mr. Scott will be your arbitrator because he's been picked up front and that's right. And he's written right into the clause. How can that be new? It's not. They tried. But I thought you said that's where the novel would be resided. And now you're saying it's not new. When it comes to wills, I'm sorry. When it comes to wills, I'll agree with Judge Dyck that it's not novel. I mean, it's novel, but in our view, it's obvious under 103. And that's because the Ginter-Walker combination talks about documents in general. It's not specific. It does not exclude. So you're deducing that the artisan reading the Ginter-Walker combination would conclude that every conceivable type of legal instrument can be made the subject of this kind of mandatory arbitration, pre-enrollment, pre-selection of the arbitrators, etc. That's correct. Because Ginter talks about documents. And then it's documented. It could be any kind of document. It's not important. But it's talking about bilateral relationships, right? In Ginter? Well, Ginter talks about other things and not just – it has an electronic intermediary, but it's not solely dedicated to dealing with bilateral arrangements. But both disputants in Ginter have to agree up front to arbitrate under this restricted system, right? The parties to – whichever parties are involved in the creation of the document have to preordain that the Ginter system will handle the arbitration. Okay. But how does that help you when we're talking about a unilateral document? Because Ginter's system is not exclusively devoted to bilateral arrangements. And if I can just point you to an example of that. At A582, columns 9 through 10, Ginter explicitly goes through – excuse me, not 582. It's A604. It's an example on doctor management slash coordination of health records. In this example, A604, it talks about how a doctor can use Ginter's electronic intermediary to write up patient records and drug prescriptions and then submit them to Ginter's trusted go-between. And then the trusted go-between, in turn, will store those patient records in its own secure archives and maintain its confidentiality. And that suggests using a mandatory arbitration clause pre-enrolled in a will? I think it suggests very clearly – in fact, it expressly states that Ginter is not exclusive to bilateral arrangements. This, in a sense, is a unilateral document in that the creator of this document is one party. It's the doctor. And so now – Who is bound? In this Ginter example, who is bound? You're talking about the insurer, the patient, the hospital owner. Who is bound when the doctor does this unilaterally? Well, in this sense, it's maintaining the security of this document. But the invention is designed to lock the courthouse door and force the will challenger to go through the system and not the courthouse. And that doesn't seem to be anywhere hinted at by Ginter. Well, the point of this example is simply to show that Ginter is a lot more than just about bilateral contractual arrangements. Ginter teaches that its electronic go-between can be used in other environments as well. Now, as for the question of the combination, I think the point to be made here is that once the Ginter-Walker combination – it's known that it's preordained that that system will handle the arbitration of any dispute that arises out of the document that's registered with that system. If they're combinable. If they're combinable. Then likewise, whether it's a contract or a will or any other legal instrument – What is the evidence and what are the findings that support combinability of Ginter and Walker and Perry and the arbitration fee schedule? The four references that are mainly discussed? Well, just dealing with Ginter and Walker, the board discusses that at A7-8. Ginter teaches a lot of things about how its electronic intermediary can do a lot of things, including arbitration services. Then the board says at A7, quote, Although Ginter does not describe the specifics of, going to A8, arbitration which might be required of the electronic intermediary, Walker teaches that it was well known to put binding arbitration language into documents that requires all the disputes be submitted to binding arbitration and to also provide the arbiter for each dispute. So what? That just says what they each teach. I'm asking a totally different question. Assuming that what they each teach is precisely what you say, what is the basis of saying the artisan in this field would know to combine them? Because Ginter talks about the concept of arbitration services. Once Ginter talks about that concept, one of ordinary skill in the art would know that it could use any known embodiment of how to perform those arbitration services and use that in Ginter's system. Walker teaches one particular embodiment. Are you saying that if I'm an inventor of a system that somehow involves arbitration, that that makes every patent or other prior art combinable with anything else that talks about arbitration? They're all combinable automatically because they share in common some reference to the word arbitration. Well, we have more than that here, because the two systems of Walker and Ginter overlap and are related. And as we explain in our retrieve, they are both electronic systems. Does the latter of those two patents cite the former as prior art? No, there's not some kind of expressive judgment, but it's never been a requirement of the law that we have that level of expressive judgment. I'm just trying to test your idea that they're so overlapping that anybody who knew about one would know about the other and would see that they're overlapping and would see that they're combinable and so on. Well, I think as an analogy, if you have one type of car, and then there's a description of that car, and then it says a car with brakes, but it doesn't give you any specifics about what kind of brakes there are. Then you have another reference that talks about another different kind of car, but it talks about this very specific anti-lock braking system. One of ordinary skill in the art would see both and knowing both. I agree with you there. But it's not remotely. It's analogous. The problem is there's no mention in the prior art here of using arbitration and wills in this fashion. And in some of the questions that we've asked you today, it kind of comes as a surprise that state law permits this. Why isn't this novel? It's novel, but it's obvious, Your Honor. Well, I mean, why is it so obvious? I mean, what's the basis? I don't see the reasoning that there's any suggestion in the prior art that the board relied on here to use arbitration in connection with the will. The fact that there's a patent on storing wills doesn't do much, does it? No. You agree with that, right? Just the fact alone that there's a central depository for wills isn't close enough to get us there. But the fact that the Ginter-Walker combination gives us a system that handles arbitrations for any documents that are registered with that system, and the fact that Ginter specifically, one of its roles is to handle and oversee that all the terms of the given documents stored in its system are carried out properly, that makes it a natural fit for wills as well. Because you know with wills, and as the board pointed out at A-9, you're going to have some third party, some executor, that's going to be handling all the terms of a will. And so that is something the board found that Ginter's system likewise would do. Mr. Chen, is there anything more we can depend on than the fairly cursory 10-page opinion of the board here? Sometimes the board opinion expressly incorporates by reference the examiner's answer, but that didn't appear to be done here, right? It didn't use that language, but nonetheless the examiner's answer, I think, still is part of the board's reasoning because of rule 37 CFR section 41.50, which specifically states that any aspect of an examiner's answer that isn't rejected by the board is deemed to be a general affirmance of that examiner's decision. Well, I'm not talking about whether everything decided by the examiner was approved by the board. I'm talking about something totally different. I'm talking about what we are allowed to look at as the justification for the obviousness conclusion here. And since the examiner's answer was not incorporated by reference and made part of the opinion as if it were fully set forth here, I'm assuming, and I'm asking if you agree, that we're limited to these 10 or 12 pages of the three-judge board decision. Right, and I think the fact that the board did not reject any of what the examiner said means that it generally affirmed what the examiner said on top of the statements that the board made itself. Is there anything in the examiner's answer which is more helpful than what's in the board's decision? I don't recall anything specific off the top of my head here, except that at A274, the examiner points out that, quote, the Ginter et al. system is broadly applied to processing documents. In particular, Ginter et al. teaches systems and techniques for secure document delivery, execution of legal documents, and electronic data interchange. The Ginter et al. system is document independent. Therefore, it can be used to process any contract and or document, including unilateral documents. Mr. Chen, do you think that the content and nature and extent and scope and specificity and so forth of this opinion meets the thrust of In-Rei Sang-Li? Yes, absolutely. As I recall, in Sang-Li, we faulted the board for not being specific and clear and fulsome in setting forth the grounds for saying references A, B, and C are readily combinable. I don't see much in here that talks about why these references are combinable. So it looks to me like it's a little thin on that dimension, and I'm wondering if it does comply with the implication of In-Rei Sang-Li or several of the other cases, including the pumpkin bag case. It's an unpronounceable applicant's name. I'll call it Demizak for now. But yes, I do believe that this case satisfies the requirements of Demizak and Sang-Li. When I think of those cases, I think that there's some form of conclusion analysis there. If we agree, then that solves the problem. Now suppose we disagree. Is it not within our power, in a circumstance where we cannot decide whether the board was right, all we can be sure of is that we can't know whether the board was right without a fuller opinion and more careful fact-finding by the board. If that's our conclusion, are we not authorized to send this back for at least further fact-finding, further reasoning, a better, a longer opinion? I think that would be this court's Dexter B. Davidson opinion. So we have the authority. Yes. But you'd say here it's not necessary. Not necessary because if you read 8.9 through 10, the discussion on unilateral documents, how there isn't a requirement to expressly say unilateral documents can be used in a mandatory arbitration system. I think you made your position very clear. We've given you a lot of extra time because we have some evident problems with the case. Judge Post, do you have anything for me? All right. Thank you very much, Mr. Chen. You're very quick on your feet, and we appreciate your help. Mr. Scott, you have four minutes or up to four minutes as you need for a rebuttal on restoration. All right. Let me just say that I'm not going to cover the ground that you so thoroughly covered with Mr. Chen about, but I will say that as explained in the brief, we believe these references are not addressed to the same problem. They're not combinable. They are not in any way to their left. They're in different classes in the patent office, and that we do not believe that the conclusory opinion that the board delivered shows how these very disparate elements could be put together. What about the theory that they are pertinent to addressing the problem the inventor purported to address, and therefore even if they're in different fields, different classifications, very different settings, they're combinable because somebody focused on that problem would know to look at these. Well, they don't postulate the problem that the inventor was facing. In fact, one of the— No, I didn't say that. I said they were relevant to the problem that the inventor was facing. Well, they are not relevant to the problem the inventor was facing because in the case of Genter, there's only a repository for documents. There's only the mention of inserting and using arbitration prior to the creation of a document to facilitate its creation. In the Walker reference, which is a buyer-driven purchase order, there's only the discussion of inserting an arbitration clause if the party allows it, no discussion of what that clause would be. And then there's no discussion of arbitration in the Perry reference at all. So I don't want to belabor the point because you've obviously got it clearly in mind, but there isn't any kind of suggestion anywhere there. No question, Mr. Chen is absolutely correct in saying it can come from looking at the reference as a whole, at the problem the inventor faced. It can come from a suggestion of one field being applicable to the other, but there's got to be something. And it's just not here. Let me just make one, just a couple of other points. The one thing that I find particularly disturbing is that the inventor in this case did submit a 132 affidavit indicating the long-felt need for this invention, and I think another elementary part of the board's failure to deal with the record is simply dismissing that declaration without explaining why they thought it didn't overcome, obviously, as this court has held in many cases, secondary considerations are important. Well, they can be. It depends what the content of the secondary consideration evidence is, what the probative force is, how broad the claims are, and so on. That's all very true. But what the board must do, and what it failed to do here, is explain why that evidence wasn't probative and shouldn't be considered. That's another incredible evidentiary deficiency in this case, which I think this court should take into consideration. A deficiency of reasoning? Yes, absolutely. But not of evidence. You said evidentiary deficiency. Well, the rule is, as you're well aware, once you put forth a secondary consideration, the patent office must either state a basis for rejecting it, or put forth evidence showing that it isn't probative, or explain why it doesn't consider it to have a force and effect with respect to the patentability of the invention. And you're saying it failed on the third part of the test? Well, it failed on all three. But it didn't explain why it merely said we've considered it and find it not persuasive, and nothing more than that. In fact, it treated the secondary consideration evidence much more personally than it did indeed the motivation to combine. And I think that in and of itself is grounds for reversal. All right. Anything further? No. All right. Thank you, sir. Thank you, Mr. Chen. We'll take the case under advisement. Thank you.